**FAEGRE DRINKER BIDDLE & REATH LLP**
MICHAEL JAEGER (SBN 289364)
michael.jaeger@faegredrinker.com
11766 Wilshire Blvd., Suite 750
Los Angeles, CA 90025
Telephone: (310) 500-2090
Facsimile: (310) 500-2091

KERRY L. BUNDY (*pro hac vice*)
kerry.bundy@faegredrinker.com
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

Attorneys for Plaintiff
ROBEKS FRANCHISE CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBEKS FRANCHISE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTINE ALVEARI and HEALTHY EATS, LLC,<br><br>Defendants. | Case No. 2:20-CV-00379-MWF (SSx)<br><br>Hon. Michael W. Fitzgerald<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' EMERGENCY MOTION SEEKING:**<br><br>1) **CONSOLIDATION OF PRELIMINARY INJUNCTION HEARING WITH TRIAL ON THE MERITS;**<br>2) **PERMISSION TO CONDUCT DISCOVERY; AND**<br>3) **A BRIEFING SCHEDULE AND EXTENSION OF TIME TO FILE AN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**AND DECLARATION OF MICHAEL JAEGER IN SUPPORT THEREOF**<br><br>Action Filed: January 14, 2020 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants Healthy Eats, LLC and Christine Alveari have been aware since September 2019 that if they did not cure the defaults under the Franchise Agreement identified by Plaintiff Robeks in the September 17, 2019 Notice of Default and attached Audit Report, Robeks would "**vigorously enforce its rights under the noncompetition covenants to which [they] are bound under the Franchise Agreement**," as Robeks stated in that Notice of Default.  (*See* Declaration of Jimmer Bolden ("Bolden Decl.," Dkt. 17-1), Exhibit G, pp. 3-4 (emphasis in original).)  Defendants' intentional violations of the Franchise Agreement, which have forced Robeks to take action to protects its franchise system, have resulted in their current predicament.  Defendants' requests for additional time at this point ring hollow, given that they:

- ignored two audit reports, the Notice of Default, the Notice of Immediate Termination (*see id.*, Exhibit H), and the Final Notice (*see id.*, Exhibit I), which gave them numerous opportunities and multiple avenues to resolve the dispute;

- actively evaded service of the Complaint in this action for several weeks in January (*see* Declaration of Michael Jaeger in support of Opposition to Emergency Motion ("Jaeger Decl."), ¶ 2);

- did not hire counsel until February 13, 2020 (*see* Declaration of Patrick Dempsey in support of Emergency Motion ("Dempsey Decl."), ¶ 5); and

- asked for and received a one-week extension of their existing deadlines from Robeks and this Court just last week (*see* Jaeger Decl., ¶ 3; *see also* Dkt. 28).

Like the larger dispute in which they find themselves, Defendants' current situation is entirely of their own making, and this Court should not permit them to

FAEGRE DRINKER
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

PLAINTIFF'S OPPOSITION TO DEFENDANTS' EMERGENCY MOTION
Case No. 2:20-CV-00379-MWF (SSx)

US.126932825.03

1  delay their day of reckoning any further as they continue to profit from goodwill
2  that does not belong to them.  *See Jiffy Lube Int'l. v. Weiss Bros.*, 834 F. Supp. 683,
3  691 (D.N.J. 1993) (franchise agreement conveys "the franchisor's good will to the
4  franchisee for the length of the franchise.  When the franchise terminates, the good
5  will is, metaphysically, reconveyed to the franchisor.").  Defendants should be
6  required to meet the obligations they specifically requested and agreed to a week
7  ago, and this Court should keep the existing hearing on Robeks' pending motion on
8  calendar so that Robeks finally has the opportunity to obtain the relief it has spent
9  considerable time and money to achieve.

10 **II.    BACKGROUND**

11      Robeks has set forth the factual and procedural background in this matter in
12 its Complaint (*see* Dkt. 1, ¶¶ 22-96) and in its Motion for Preliminary Injunction
13 (*see* Dkt. 17, pp. 1-8), and will not repeat that information here.  However, several
14 key points in Defendants' "Procedural History" section require correction.

15      Defendants assert that "Plaintiff was fully aware of the fact that Defendants
16 continued to operate their business in South Florida in 2017, 2018, and 2019."
17 (Emergency Motion, Dkt. 29, at 3.)  Robeks was indeed aware that Defendants
18 were operating their business during these three years; however, *Defendants were*
19 *operating their business as a Robeks franchise*.  This is evident from a photograph
20 taken on August 6, 2019 – two years after the nominal expiration of the Franchise
21 Agreement – and included in the Audit Report attached to the Notice of Default:

FAEGRE DRINKER
ATTORNEYS AT LAW
LOS ANGELES

- 2 -
PLAINTIFF'S OPPOSITION TO DEFENDANTS' EMERGENCY MOTION
Case No. 2:20-CV-00379-MWF (SSx)

US.126932825.03



(Bolden Decl., Dkt. 17-1, Ex. G, ECF p. 121; report date shown on ECF p. 103.) One can also review the comparison photographs shown on p. 19 of Robeks' Complaint, which reflect the state of the store on December 4, 2019 – well after the date on which the Franchise Agreement was terminated – to see that Defendants had been using and were still continuing to use Robeks' marks, drink names, pricing, and signage, all of which are materials and information provided to Defendants by Robeks by virtue of the franchising relationship. (*See* Dkt. 1, p. 19.)

FAEGRE DRINKER
ATTORNEYS AT LAW
LOS ANGELES

- 3 -
PLAINTIFF'S OPPOSITION TO DEFENDANTS' EMERGENCY MOTION
Case No. 2:20-CV-00379-MWF (SSx)

US.126932825.03

Robeks did not enforce the noncompete provisions of the Franchise Agreement between August 2017 and August 2019 because it had no reason to; Defendants were continuing to fully perform under and pursuant to the terms of the Franchise Agreement, as was Robeks.  A franchisee cannot be permitted to "hoodwink" a franchisor by letting a Franchise Agreement expire, continuing to perform as if nothing had changed, and then claiming they had actually been running an independent business during that time whose existence had been ratified by the franchisor – ironically, by acceptance of franchise royalties, according to Defendants – and which was now free of its restrictive covenants.  (*See* Emergency Motion, p. 3.)

Another key fact left out of Defendants' Procedural History illustrates the same contradiction.  Defendants claim that the Franchise Agreement expired in August 2017, triggering the two-year noncompete provision.  (*Id.*)  However, there are numerous, extensively detailed additional obligations that are triggered by the expiration of the Franchise Agreement with which the franchisee must comply, set forth in Section 18 of the Franchise Agreement:

- 4 -

FAEGRE DRINKER
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFF'S OPPOSITION TO DEFENDANTS' EMERGENCY MOTION
Case No. 2:20-CV-00379-MWF (SSx)

US.126932825.03

18.  **RIGHTS AND DUTIES OF PARTIES UPON EXPIRATION OR TERMINATION**

   A.  <u>Franchisee's Obligations</u>.

   On and after the Effective Date of Termination or Expiration of this Agreement, Franchisee must comply with the following duties:

   1.  Within 10 days following the Effective Date of Termination or Expiration of this Agreement, Franchisee shall pay all fees and other amounts owed to Company, including late charges and interest on any late payments.

       a.  Royalty Fees and Advertising Fees imposed pursuant to this Agreement shall continue to be due and payable (and late charges and interest thereon assessed) after the Effective Date of Termination or Expiration of this Agreement until the date that Franchisee completes all post-termination obligations required by this Agreement. Franchisee's payments shall be accompanied by all reports required by Company regarding Gross Sales and business transactions through the date of payment.

       b.  When termination is based upon Franchisee's default, Franchisee shall also pay to Company all damages, costs and expenses, and reasonable attorneys' fees, incurred by Company in enforcing the default and termination.

   2.  Franchisee shall immediately cease using and, within 48 hours after the Effective Date of Termination or Expiration of this Agreement, deliver to Company the Manual; all documents, proprietary software and supporting documentation, if any, and all other confidential or proprietary materials that Company has provided to Franchisee pursuant to this Agreement; and shall retain no copy or record of any of the foregoing. Continued use by Franchisee of any copyrighted material shall constitute willful copyright infringement by Franchisee.

   3.  With respect to the Franchise Location, Company may, pursuant to the Addendum to Lease, accept an assignment of the Lease, in which case, upon notice from Company, Franchisee shall forthwith vacate the Franchise Location, leaving it in good condition and repair with all fixtures and equipment in good working order. Company shall give Franchisee written notice of its election to accept an assignment of the Lease within 10 days after the Effective Date of Termination or Expiration. Company's failure to timely notify Franchisee shall signify its decision not to accept an assignment of the Lease. If Company does not accept an assignment of the Lease, Franchisee shall, at its sole cost and expense, within 20 days after the Effective Date of Termination or Expiration, remove all signs and other physical and structural features that readily identify the site as a ROBEKS store, in a manner acceptable to Company, so that the former Franchise Location no longer suggests or indicates a connection with the ROBEKS System.

   4.  Franchisee shall execute and deliver a general release, in form satisfactory to Company, of any and all claims against Company and its officers, directors, shareholders, employees and agents.

   5.  Franchisee shall cease using or selling all Proprietary Products. This obligation shall extend to perishable and non-perishable Proprietary Products, regardless of their condition.

   6.  Franchisee shall permanently cease using, in any manner whatsoever, the Proprietary Marks, Confidential Information, and any other property associated with the ROBEKS System or which suggest or indicate that Franchisee is, or was, an authorized ROBEKS franchisee or continues to remain associated with the ROBEKS System. Franchisee shall cancel all advertising and promotional activities which associate Franchisee with the ROBEKS System. Continued use by Franchisee of any of the Proprietary Marks or Confidential Information shall constitute willful trademark infringement and unfair competition by Franchisee.

   7.  Franchisee shall take such action as may be required to cancel all fictitious or assumed name or equivalent registrations relating to its use of the Proprietary Marks.

FAEGRE DRINKER
ATTORNEYS AT LAW
LOS ANGELES

US.126932825.03

- 5 -
PLAINTIFF'S OPPOSITION TO DEFENDANTS' EMERGENCY MOTION
Case No. 2:20-CV-00379-MWF (SSx)

> 8. Franchisee shall cease using all telephone and facsimile numbers and listings used in operating the Franchised Business and take all steps necessary to remove all telephone and other business directory listings that display any of the Proprietary Marks. Franchisee shall furnish Company with evidence satisfactory to Company demonstrating Franchisee's compliance with this obligation within 10 days after the Effective Date of Termination or Expiration of this Agreement. Company shall have the right to demand an assignment of the telephone and facsimile numbers and listings, in which case Franchisee hereby consents to the assignment, without compensation, as of the Effective Date of Termination or Expiration.
>
> 9. Franchisee shall comply with the covenants set forth in this Agreement regarding competition, non-interference and Confidential Information.
>
> 10. Franchisee shall keep and maintain all business records pertaining to the business conducted at the Franchised Business for 7 years after the Effective Date of Termination or Expiration of this Agreement. During this period, Franchisee shall permit Company to inspect such business records as frequently as Company deems necessary.

(Bolden Decl., Dkt. 17-1, Ex. B.) Defendants did none of these things.[1] (*See id*, ¶ 2.) Furthermore, it was these provisions, in full, that Robeks sought Defendants' compliance with in the Notice of Immediate Termination, not the de-branding and continued operation of the store, as Defendants suggest. (Emergency Motion, p. 4.)

Having continued to operate as a Robeks under the Franchise Agreement, Defendants cannot now retroactively declare that what they were actually doing during that period was operating an independent business that by every measure was a Robeks except for purposes of the noncompete covenant. The argument is nonsensical given the documentary and sworn evidence, including photographs, before this Court. Defendants' actions demonstrated continued operation under the Franchise Agreement for nearly two years following the August 2017 "expiration," sufficient to establish an implied-in-fact contract under Florida law with all of the terms of the Franchise Agreement. (*See* Motion, Dkt. 17, p. 20.)[2]

---

[1] Defendants "complied" in a manner of speaking with paragraph 1(a), requiring royalty and advertising payments, in that they continued making such payments (for years), and paragraph 9, the noncompete covenant, since they continued to operate the store as a Robeks franchise. (*See* Declaration of David Rawnsley ("Rawnsley Decl."), ¶ 2.)

[2] Robeks must also make one final procedural note, which is that Defendants did not fully comply with this Court's *ex parte* procedures. Although counsel for Robeks received Defendants' filing via CM/ECF, counsel for Robeks did not receive any separate service or communication from Defendants notifying it "that opposition papers must be filed no later than 24 hours (or one court day) following such service." (Jaeger Decl., ¶ 4.)

FAEGRE DRINKER
ATTORNEYS AT LAW
LOS ANGELES

- 6 -
PLAINTIFF'S OPPOSITION TO DEFENDANTS' EMERGENCY MOTION
Case No. 2:20-CV-00379-MWF (SSx)

US.126932825.03

## III.  ARGUMENT

Defendants have had five months to prepare for this day.  Robeks made clear to Defendants, repeatedly, what the consequences would be if Defendants continued to operate their de-branded store in violation of the Franchise Agreement, the noncompete covenants, and state and federal law.  The Franchise Agreement, the Confidentiality, Non-Disclosure and Non-Competition Agreement, and the Personal Guaranty, all of which Alveari signed, all set forth the same dispute resolution provisions, including court actions for emergency/interim relief.  (*See* Bolden Decl., Dkt. 17-1, Exs. B-D, ECF pp. 49-51, 80-82, 88-90.)  Particularly given the timing of Alveari's actions – beginning the "de-branding" process in August 2019, exactly two years after she claims the Franchise Agreement expired (i.e. the length of the restrictive covenant) – it appears she knew exactly what she was doing and was familiar with the applicable legal documents.

Furthermore, Defendants have already been given a one-week extension.  In their discussions with Robeks' counsel about the joint stipulation, Defendants' counsel did not reference either the possible need for an additional extension, or the possibility of the instant Emergency Motion.  (*See* Jaeger Decl., ¶ 3.)

Defendants' procedural arguments – Rule 65(a)(2), the need for discovery, and a new briefing schedule – are all simply different ways of asking for more time.  They also, significantly, will allow Defendants to continue operating their store in violation of the Franchise Agreement and state and federal law during those delays, *which is precisely the activity Robeks filed its Complaint and Motion to stop*.  Defendants have no legitimate excuse for not being prepared for Robeks' actions, and their lack of preparedness should not be rewarded with additional time in which they can flout their obligations and continue to cause irreparable financial and reputational harm to Robeks.  (*See* Motion, pp. 12-14, 28-29.)

Defendants' cited cases are similarly problematic. *Aliya Medcare Fin., LLC v. Nickell*, 2014 WL 12526382, *8 (C.D. Cal. Nov. 26, 2014) (Emergency Motion,

FAEGRE DRINKER
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

PLAINTIFF'S OPPOSITION TO DEFENDANTS' EMERGENCY MOTION
Case No. 2:20-CV-00379-MWF (SSx)

US.126932825.03

p. 5) does not stand for the proposition that "courts may consolidate preliminary injunction hearings with a trial on the merits if the preliminary injunction sought would effectively decide the entire case"; *Aliya* does not mention consolidation, or Fed. R. Civ. P. 65(a)(2), at all.[3]  Further, the court in *Boldon v. Humana Ins. Co.* actually denied the motion to consolidate, contrary to Defendants' statement that "[a]s in *Boldon*, this court should order a consolidation of the preliminary injunction hearing with a trial on the merits" (Emergency Motion, p. 6).  466 F. Supp. 2d 1199, 1208 (D. Ariz. 2006).  Finally, in *U.S. S.E.C. v. Fitzgerald*, the plaintiff had already achieved some of the relief it sought when the court consolidated the preliminary injunction hearing with a trial on the merits, because it had already granted a temporary restraining order.  135 F. Supp. 2d 992, 1025 (N.D. Cal. 2001).  Robeks has no such interim protection here.

Defendants also make several bald statements that misstate the facts or law.  They assert that this Court "should not grant Plaintiff's request for an injunction, whether preliminary or permanent, until all the facts and law are clearly established."  (Emergency Motion, p. 6.)  Defendants cite no authority for this proposition, nor could they, for if that were the law, a preliminary injunction as a legal remedy would not exist.  A preliminary injunction is just that – preliminary.  In its Motion, Robeks has set forth the applicable standards for issuance of such an injunction, and contrary to Defendants' conclusory statements (*e.g.*, "Plaintiff has absolutely no legitimate business interest" (*id.*, p. 3)), has shown that it meets those standards with a combination of legal argument and sworn evidence.  (*See* Motion, pp. 9-31.)

In addition, while Robeks believes it would be improper to allow Defendants additional time for all of the reasons set forth above, the relevant facts in the four

---

[3]  Robeks is not suggesting Rule 65(a)(2) does not permit consolidation, but points out the discrepancy because it continues the pattern of similarly incomplete or inaccurate statements found in the Emergency Motion's Procedural History, as discussed in Section II, *supra*.

- 8 -
PLAINTIFF'S OPPOSITION TO DEFENDANTS' EMERGENCY MOTION
Case No. 2:20-CV-00379-MWF (SSx)
US.126932825.03
FAEGRE DRINKER
ATTORNEYS AT LAW
LOS ANGELES

listed areas of discovery Defendants seek cannot realistically be disputed (Emergency Motion, p. 7):

- Robeks's knowledge of Defendants' continued operation of their business location from August 2017 to August 2019 (and, in some ways, beyond): as shown above, and as discussed in detail in the Complaint and Motion, Robeks was well aware that, and how, Defendants were operating their business during that time period: as a Robeks franchise, to all internal and external appearances.

- Robeks' voluntary acceptance and ratification of Defendants' continued operation of their business location from August 2017 to August 2019 (and again, in some ways, beyond): as referenced above, and as discussed in detail in the Complaint and Motion, during this time period, pursuant to the Franchise Agreement, Robeks accepted franchisee royalty and advertising payments from Defendants, and provided Defendants on an ongoing basis with Robeks franchisee information, products, and materials that Defendants then used in their franchise location (as confirmed by periodic franchisor audits). (*See* Rawnsley Decl., ¶ 3.)

- The benefits conferred by Defendants on Plaintiff from August 2017 to August 2019 (and, in some ways, beyond): pursuant to the terms of the Franchise Agreement, during this time period Defendants paid royalties and advertising fees to Robeks out of their gross sales from the franchise on a weekly basis, pursuant to the terms of the Franchise Agreement. (*See id.*)

- Robeks' lack of any legitimate business interest in enforcing the noncompete agreement: under the applicable Florida statutes and precedent, Defendants cannot seriously dispute the existence of numerous legitimate business interests. (*See* Motion, pp. 22-25

(referencing multiple such interests, including trade secrets; non-trade secret valuable confidential business information; goodwill associated with trademarks or other service marks; franchisor goodwill; and a franchisor's interest re-entering the market previously serviced by a terminated franchise).) Any one of these is a legitimate business interest under Florida law; given Robeks' detailed discussion of a myriad of its interests in the Motion, it strains credulity for Defendants to claim that Robeks has "absolutely no" such interest. (Emergency Motion, p. 3.)

Thus, both because their own actions have put them in the position they now find themselves in as far as discovery, and because on the merits such discovery would not alter the determinative points Robeks makes in its Motion, Defendants' requests to delay the preliminary injunction hearing and briefing should not be granted.

## IV.   CONCLUSION

For all of the reasons set forth above, Robeks requests that the Court deny Defendants' Emergency Motion and maintain the briefing and hearing schedule, already extended by a week, set forth in the parties' joint stipulation negotiated and submitted last Friday and the Court's related order entered this Monday (Dkt. 28).

DATED:  February 28, 2020

**FAEGRE DRINKER BIDDLE & REATH LLP**

By:   */s/ Michael Jaeger*
      MICHAEL JAEGER
      KERRY L. BUNDY (*pro hac vice*)

*Attorneys for Plaintiff*
ROBEKS FRANCHISE CORPORATION

FAEGRE DRINKER
ATTORNEYS AT LAW
LOS ANGELES

- 10 -
PLAINTIFF'S OPPOSITION TO DEFENDANTS' EMERGENCY MOTION
Case No. 2:20-CV-00379-MWF (SSx)

US.126932825.03

# DECLARATION OF MICHAEL JAEGER

I, Michael Jaeger, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California and am counsel of record for Plaintiff Robeks Franchise Corporation ("Robeks") in this matter. I am over the age of 18 and have personal knowledge of all the facts stated herein. If called as a witness, I could and would testify competently to the matters set forth below.

2. The Complaint in this action was filed on January 14, 2020. Defendants were personally served with the summons and Complaint on February 1, 2020, after several weeks of evading service.

3. On Thursday and Friday of last week (February 20 and 21, 2020), I exchanged emails and spoke on the phone with counsel for Defendants regarding a potential extension of their time to respond to the Complaint and Robeks' Motion for a Preliminary Injunction. As is reflected in the joint stipulation submitted by the parties (Dkt. 22) and the Order entered by the Court (Dkt. 28), Robeks agreed to extend all deadlines and the date of the Motion hearing by one week. At no point in those emails or telephone conversations did Defendants' counsel indicate that the one week they were requesting would be insufficient or that they might be seeking additional time beyond that. Robeks relied on the fact that Defendants had not indicated any further extensions would be sought in agreeing to the one-week extension.

4. Although I received notice of Defendants' Emergency Motion filing via CM/ECF, I did not receive any separate service or communication from Defendants notifying Robeks "that opposition papers must be filed no later than 24 hours (or one court day) following such service," as required by this Court's rules.

Faegre Drinker
Attorneys At Law
Los Angeles

1

DECLARATION OF MICHAEL JAEGER ISO PLAINTIFF'S OPPOSITION
TO DEFENDANTS' EMERGENCY MOTION
Case No. 2:20-CV-00379-MWF (SSx)

US.126932825.03

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 28th day of February, 2020, at Los Angeles, California.

*/s/ Michael Jaeger*
MICHAEL JAEGER

FAEGRE DRINKER
ATTORNEYS AT LAW
LOS ANGELES

2
DECLARATION OF MICHAEL JAEGER ISO PLAINTIFF'S OPPOSITION TO DEFENDANTS' EMERGENCY MOTION
Case No. 2:20-CV-00379-MWF (SSx)

US.126932825.03